In the Matter of FRED MOUAKAD, Individually and on Behalf of Other Tenants of HOTEL MARTINIQUE, INC., Similarly Situated, Petitioner, against PAUL L. ROSS et al., Constituting the Temporary City Housing Rent Commission, et al., Respondents.

Supreme Court, Special Term, New York County, March 19, 1948.

*David C. Lewis* for petitioner.

*William L. Messing* for Paul L. Ross and others, constituting the Temporary City Housing Rent Commission, respondent.

*Amend & Amend* for Hotel Martinique, Inc., respondent.

*Charles W. Merritt* and *Woodson D. Scott* for Hotel Association of New York City, Inc., *amicus curiæ.*

HOFSTADTER, J.   When hotels were removed from rent control by passage of the Federal Housing and Rent Act of 1947 (U. S. Code, tit. 50, Appendix, § 1881 *et seq.*), the resulting wide-spread

increase in the rents of permanent guests of hotels presented an emergency which the City of New York met by the enactment of Local Law No. 54 of 1947 (adding section U41-6.0 to the Administrative Code of the City of New York). Subdivision a of that section reads: '' It is hereby declared that a serious emergency exists in the city of New York by reason of the shortage of housing accommodations, hotel, apartment hotel, rooming house and lodging house accommodations, by reason of which the safety and health of the inhabitants are seriously menaced. Unless the rents for such accommodations are stabilized, disruptive practices and abnormal conditions will produce serious threats to the public health, safety and general welfare. Action by local law is necessary to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the health, safety and welfare of the inhabitants of the city. It is hereby declared to be the policy of this city for a limited time, to impose certain restrictions upon such rents for hotel, apartment hotel, rooming house and lodging house accommodations in the city, for the purpose of alleviating the present housing emergency and preventing such abuses.''

A temporary city housing rent commission was created, with power to adopt rules and regulations to effectuate the purposes of Local Law No. 54. In addition it was provided that maximum rentals for permanent guests at hotels were to be fixed at the rates paid by the tenants on June 30, 1947. The commission was given power (subd. c) to '' make such adjustments in such maximum rents as may be necessary to correct inequities or to further carry out the policies declared in subdivision a hereof.''

Regulations were promulgated permitting any hotel, claiming the existence of an '' inequity '', to file an application for an adjustment of rents to correct the '' inequity.''

Respondent, Hotel Martinique, filed such an application in September, 1947. After the tenants were notified of the application and given permission to file any objections to the request, the commission (without any hearing being afforded to the objecting tenants to test the validity of the hotel's figures and claims), issued an order increasing the rents of the permanent guests by 35%. Upon reconsideration, after protests by tenants, the commission reduced the increases to 30%, by its order dated January 7, 1948. The rent increases were made retroactive as of October 1, 1947.

This proceeding is brought pursuant to article 78 of the Civil Practice Act to annul the determination of the commission in granting the rent increase. Petitioner is entitled to the relief sought. The action of the commission was arbitrary and unlawful, and not in consonance with the purpose of the local law.

This court holds, in the first place, that in a proceeding in which the tenants' rights are so vitally affected that their rents may be increased without limit, depending to what extent the commission might find inequities, the tenants are entitled to a hearing where they may examine representatives of the hotel operators to determine the accuracy and pertinency of the figures they present as a basis for their claims. Merely permitting such tenants to send in their written replies and to examine some data at the offices of the commission does not satisfy the rights to due process where the tenants' property may be taken. In such cases, where the tenants demand a hearing it should be given them, with the opportunity to cross-examine the applicants.

In arrant disregard of the primary requirement of a " fair hearing ", the respondents have denied this petitioner any opportunity to be heard; and such repressive and lawless course may not prevail.

Nor may the court countenance the method adopted by the commission in reaching a conclusion as to a fair return; in its various aspects it presents a shocking usurpation of power beyond its competence as limited by the law of its creation, by precedent and sound principles.

Underlying the entire proceeding before the commission was the assumption that the provision of Local Law No. 54, giving the commission power to adjust rents to correct " inequities ", was a mandate to see that hotel operators made a fair return on their investments. Proceeding upon this erroneous premise, the commission established a " hardship formula " to alleviate that inequity. In essence that formula provides that if a hotel operator is not earning 6% on the fair value of his investment, an adjustment in rents will be directed by the commission to enable the operator to obtain such a return. No such standard or formula is set forth in the local law, and an administrative rule may not be broader than the legislative grant. In dealing with the emergency Business Rent Law, which does set forth many standards to guide the courts in fixing " emergency " rents, the Court of Appeals in *Matter of Fifth Madison Corp.* (*New York Tel. Co.*) (297 N. Y. 155, 162) said, per FULD, J.: " In any event, though, neither State nor Federal Constitution

commands that 6% is the lowest yield that may properly be allowed to landlords." In the absence of statutory authority, the action of the commission in fixing 6% on the fair value of the investment as a formula for determining whether any " inequity " existed was unlawful and arbitrary.

The action of the commission in applying its hardship formula is unreasonable. The " fair value of the investment " was determined by first accepting the " assessed valuation " of the property. Where the actual investment made by the operator is less than the assessed valuation, the actual investment should govern to determine whether any " inequity " exists.

It is well known that many hotel properties were acquired by their present owners at a fraction of their present value. In this light, taking the assessed valuation would appear designed to inflate the basis upon which income to the owner is to be fixed and becomes a device to swell the increment on his investment beyond all measure or semblance of a fair return. Thus the power confided to the commission to correct inequities is completely subverted.

Nor should the commission have considered the items of so-called " working capital " in arriving at its result. Moreover, depreciation, unless there is evidence of an actually " depreciated value ", is not a proper cost of maintenance to be considered in making decisions under an emergency rent law. (See *Matter of Fifth Madison Corp. [New York Tel. Co.], supra.*) An allowance of " theoretical depreciation " is unwarranted.

Finally, the court has grave doubts whether under Local Law No. 54, power is given to the commission to make any of its orders retroactive in effect. Though the court does not now determine this question, persuasive reasons are urged for the view that the correction of any inequity which may be found should be wholly prospective.

The brashness with which the commission proceeded here to levy a 30% increase against these tenants betrays insensibility to the declared policy and manifest spirit of the law of its being; and to lend judicial sanction to a result based on so tenuous a record would be a gross disservice to the maintenance of confidence in the theory, practice and integrity of administrative agencies generally.

Accordingly, the application of the petitioner is granted, the determination of the commission is annulled and the matter remitted to the commission to proceed on the owner's application in accordance with this opinion. The cross application is denied.

Settle order.