In the Matter of MICHAEL B. ATKINS et al., Petitioners, against HERMAN T. STICHMAN, as Commissioner of Housing of the State of New York, et al., Respondents.

Supreme Court, Special Term, New York County, June 25, 1948.

*Barney Rosenstein* for petitioners.

*Harry Loeb Mostow* for Knickerbocker Village, Inc., respondent.

*Nathaniel L. Goldstein, Attorney-General,* for Herman T. Stichman, as Commissioner of Housing of the State of New York, respondent.

KOCH, J. This is an article 78 proceeding. Petitioners are tenants in an apartment project known as Knickerbocker Village which is owned and operated by a limited dividend housing corporation organized under the laws of this State. Under the law as it existed at the time the apartment house was erected the maximum rent chargeable in this development was $12.50 per room. Chapter 341 of the Laws of 1947 amended section 179 of the Public Housing Law so as to permit a maximum monthly rental of $15 per room. After the amendment of the law and as of April 1, 1948, the maximum rent was increased to $14 a room by the respondent commissioner, this increase having been properly approved by the Federal authorities. A review of the action of the respondent commissioner in permitting the rental increase is sought in this proceeding. In bringing on this proceeding petitioners obtained an order to

show cause which contained a stay restraining the corporate respondent from collecting the increased rent. The latter then moved this court at Special Term, Part I, for an order striking certain allegations from the petition as sham and prejudicial and to vacate the stay. Fundamentally the issue raised on that application was the power of this court to review the determination of the Office of Housing Expediter, Office of Rent Control, a Federal agency. It was there held (193 Misc. 985) that no such power existed but that allegations made with reference to the proceedings before that administrator might remain in the petition for the reasons there stated. The stay was vacated but the corporate respondent was directed to keep separate the funds constituting the increased rentals. Direction was made to the corporate respondent to file its answer in disposing of that application. The respondent commissioner, by separate motion brought on at Special Term, Part III, moved to dismiss the complaint (N. Y. L. J., May 14, 1948, p. 1811, col. 5). This application was denied and a direction made that an answer be filed. The answers have been filed and the matter may now be considered on the merits. Preliminarily it is noted that under article IX of the Public Housing Law as amended, limited dividend housing corporations are not only limited as to the quantum of the rents which may be charged but that there are limitations on the rates of interest that they may pay on mortgages or other debts and on the right of mortgage without the consent of the respondent commissioner. The latter it appears, in the exercise of his supervisory powers, has a representative on the corporate respondent's board of directors, audits its books, requires and obtains detailed financial reports and insists that all contracts made by the corporate respondent involving an expenditure of upwards of $500 be made on competitive bids subject to the commissioner's approval. The commissioner has ten or eleven similar projects under his supervision and is, accordingly, in an ideal position to make comparisons between the reports of these corporations. The formula fixing the return which may be obtained by these housing corporations is written into the act and provision is made for distribution of any surplus. The investors may never receive back more than the par value of their investments plus dividends and interest. The history of the corporate defendant indicates that its stockholders and debenture holders have never received any dividends or interest. In seeking to have the rent increase order set aside petitioners urge that they had no hearing. In support of this contention reliance is placed on *Matter of Mouakad* v. *Ross* (191 Misc. 270).

Petitioners' brief was prepared and submitted prior to the reversal of this case by the Appellate Division (274 App. Div. 74). In the opinion of the latter court it was pointed out (p. 76) that the tenants were " seeking deliverance from their protector ". Such is the situation here. The purpose and intent of the underlying legislation was to clothe the respondent commissioner with the power to protect tenants and prevent their exploitation. It was not intended that in exercising this power the investments of others would be destroyed however. The return made in this proceeding indicates that the respondent commissioner has been diligent, prudent and careful. There is no basis for any claim that he has been remiss in the discharge of his duties. Some criticism is made of the corporate respondent's refinancing of the mortgage. Room there is for contending that the terms of this mortgage are burdensome. Yet the refinancing was done under the commissioner's supervision and bears his approval. The unusual terms indicate that the refinancing was not easily accomplished. If as a result there is a greater equity in the property at the due date of this mortgage than there would have been under a less burdensome mortgage no advantage accrues to the corporate respondent's investors. Their return as to both principal and interest is limited by statute. Considering the nature of the security, the increasing competition from public and large scale private housing in the vicinity there can be no basis for criticising the judgment of the respondent commissioner in approving the refinancing of the mortgage. No matter how many hearings petitioners may have had this situation could not have been changed, nor could the fact that the cost of maintaining apartment houses has increased, nor the fact that the corporate respondent's investors have received no interest or dividends. Beyond this there is no statutory provision for any hearing in situations such as this. Yet, despite this the respondent commissioner, after completing his own investigation and determining preliminarily what action was required, permitted the petitioners or their representatives to advance such suggestions as they thought reasonable. The corporate respondent's representatives were produced and directed to disclose any data asked of them. The commissioner's records were made available. The commissioner's representatives are said to have met petitioners' designees in the absence of the corporate respondent's officers or employees and all this on the condition that these discussions would not constitute hearings because of the preliminary determination of the respondent commis-

sioner. Petitioners' contention in this regard must be overruled. As pointed out in the Appellate Division opinion in *Matter of Mouakad* v. *Ross* (*supra*) with respect to the respondent commissioner there, this commissioner was not exercising any quasi-judicial function and accordingly no hearing at which the tenants would be present was necessary. Were their presence required, applications to increase rents would soon become rate hearings as the Attorney-General has contended here and as was observed in the Appellate Division opinion in *Matter of Mouakad* v. *Ross* (*supra*). Obviously tenants generally should not be expected to bear the burden of such hearings. It is to prevent this that the respondent commissioner's office was set up and empowered as it is.

It does not appear that the respondent commissioner's rent increase order was dependent upon the action of the Federal agency and no consideration will be given the proceedings of that agency.

The contention that the Public Housing Law as amended is unconstitutional is overruled. There can be no question of the power of the Legislature to set up a formula for the fixation of maximum rents on projects built by limited dividend corporations. The formula adopted is in no way unreasonable or violative of any constitutional rights.

Considering the matter objectively and in its entirety there is no basis whatever upon which a rental increase of 12% could be set aside in the light of existing conditions.

The application is accordingly denied in all respects. The petition is dismissed, without costs, however, and the provision heretofore made with reference to the separate maintenance of the funds constituting the rent increase is hereby vacated.