In the Matter of JESSE LUXENBERG, Petitioner, against HERMAN T. STICHMAN, as Commissioner of Housing of the State of New York, et al., Respondents, and AMALGAMATED HOUSING CORPORATION, Intervenor-Respondent.

Supreme Court, Special Term, Bronx County, August 24, 1955.

*Jesse Luxenberg,* petitioner in person.

*Jacob K. Javits, Attorney-General (Philip Watson* of counsel), for respondents.

*Milton Altman* for intervenor-respondent.

MATTHEW M. LEVY, J. Section 182 of the Public Housing Law provides (subd. 3, par. [b]), that the " dwellings in any [limited dividend] housing company project  *  *  *  shall be available (1) for persons or families who shall be entitled to occupancy  *  *  *  by reason [among other grounds] of ownership of stock in such housing company " upon satisfying certain other conditions. The Public Housing Law (§ 19) empowers the State Commissioner of Housing, " from time to time, to make, promulgate, modify, amend and repeal rules and regulations to effectuate his powers and duties ". Rule 7A, promulgated by the commissioner for this period of the shortage of residential properties, regulates evictions from housing accommodations in limited dividend housing projects. (N. Y. Official Compilation of Codes, Rules & Regulations, 7th Supp., p. 209.) Among the causes which the commissioner provided would warrant the issuance by him of a certificate to the housing company authorizing the commencement of eviction proceedings is one where " [t]he landlord is a mutual or cooperative housing

company and the landlord desires the accommodations for a stockholder or other person having a proprietary interest in such company '' (rule 7A, subd. [8]).

The commissioner authorized the Amalgamated Housing Corporation to proceed to evict one Luxenberg, the present tenant. A number of issues have been raised by the petitioner-tenant in this proceeding, brought pursuant to article 78 of the Civil Practice Act, to annul the certificate of the commissioner respondent. One of these issues is as to the applicability of the statute and rule to the Amalgamated (intervenor-respondent-landlord). Another is as to the qualifications of one Kuperberg as the prospective occupant within the meaning of the statute and the rule.

As has been seen, the statute refers to '' any housing company '', and the rule refers only to '' a mutual or cooperative housing company ''. The contention of the petitioner that the commissioner's certificate authorizing eviction proceedings must be vacated because the Amalgamated is not such a housing company as to be entitled to obtain the certificate is overruled. In the first place, it was not necessary for the commissioner to have relied upon the rule in that regard when he granted Amalgamated's application for a certificate. The statute itself grants jurisdiction enough. Section 182 alone would warrant the commissioner's action in regard to the Amalgamated, as it is conceded that the Amalgamated is a limited dividend housing company within the purview of the statute. But I would go further. On the undisputed facts, I would say that the Amalgamated comes within the spirit and intent of the regulation, if not its wording. The record shows that Amalgamated is a limited dividend housing company and that it owns and manages a mutual or co-operative housing development known as Amalgamated Houses. It would not be expected that the company would be organized under the Co-operative Corporations Law. On the contrary, as a limited dividend housing company, it must have been organized under the predecessor of the present Public Housing Law (see, for some of the history of the statute, *Tropp* v. *Knickerbocker Village,* 205 Misc. 200). Nor would the State Commissioner of Housing — dehors the Public Housing Law — have jurisdiction over ordinary private co-operative housing projects. Within his domain of supervision are limited dividend housing developments (see 1954 Annual Report of N. Y. State Division of Housing, N. Y. Legis. Doc., 1954, No. 34, pp. 120–121) whether or not operated co-operatively (called '' Mutual Cooperative Project '' in the report, *supra*). I hold, therefore, that,

when subdivision (8) of rule 7A of the commissioner's rules permits the eviction of a tenant where the " landlord is a mutual or cooperative housing company ", the rule is intended to cover (and may validly cover) a situation where the limited dividend company operates the project — as does the Amalgamated (see U. S. Dept. of Labor, Bureau of Labor Statistics, Bulletin No. 896, 1947, p. 13 *et seq.*) — on a co-operative basis.

The second contention of the petitioner is, however, sustained. Let me here state the undisputed facts on one phase of that issue. Kuperberg had entered into a written agreement with Amalgamated to buy certain shares of stock in the company, agreeing to pay $2,000 for the shares to be allotted to him, and paying $500 on account. The subscription agreement provided that the " Housing Company agrees to issue to the Purchaser twenty (20) shares, of the par value of $100 per share, of its common stock ", presumably when the $1,500 balance is paid and a lease for the subject apartment is entered into — which Kuperberg agreed to do " upon the Housing Company notifying the Purchaser that the aforementioned apartment is available for occupancy by the Purchaser ". It is obvious that Kuperberg is not a stockholder, but merely a subscriber for stock with only part payment having been made on account of the purchase. It may be true, as argued, that, under some aspects of the law, a subscriber is sometimes held to be in the same status as an actual share owner with respect to certain liabilities and rights under certain circumstances. But that does not apply here — for the terminology of the statute as worded governs. As has been seen, the section refers to " ownership of stock ". The statute is plain and specific. The legislative test is " ownership of stock " — nothing more, nothing less. If the Legislature intended to give the right here involved not only to one having " ownership of stock " but also to one who subscribed to or agreed to buy stock (without more), it could very readily have found the appropriate language so to legislate. In view of the language of the statute as enacted it does not aid the respondents to say it would be too burdensome upon the prospective occupant to compel him to make full payment of the purchase price of the stock — and that he became a stockholder without being one in fact or that he became an owner of stock without making full payment therefor. That Kuperberg does not now truly enjoy " ownership of stock " (as required by the statute) and that he is not now a " stockholder " (to use the language of the rule) cannot be disputed.

It was argued orally by the respondent commissioner and in its brief by the intervenor-landlord, that, by " their very words, the Regulations permit eviction for the benefit of a person who has something other than outright ownership of stock, namely, a proprietary interest. This can only mean something less or different than outright stock ownership. Otherwise, these additional words would be superfluous and meaningless." The contention is that the very fact that the rule refers to both stockholder and proprietary interest indicates that there is a basic distinction. It seems to me that, by the argument thus made, the respondents have stated themselves out of court. For, if something substantially less or different from " ownership of stock " is imported in " proprietary interest ", then the commissioner has legislated by rule contrary to the authority conferred by statute — and this he cannot do. The rules and regulations which the commissioner is empowered to adopt in pursuance of section 19 of the Public Housing Law are " to effectuate his powers and duties ". He cannot by rule extend his powers or expand his duties; he cannot in effect amend or modify the statute (*Matter of Bridgman* v. *Kern*, 257 App. Div. 420, affd. 282 N. Y. 375; *Matter of Hutchins* v. *McGoldrick*, 282 App. Div. 945). If the action of the commissioner in making the rule was contrary to law, it was not a proper exercise of the powers vested in him and could therefore not be relied upon as a jurisdictional base for the issuance of the certificate of authorization of eviction proceedings. (Cf. *Matter of Motta* v. *Temporary State Housing Rent Comm.*, 202 Misc. 341, 344–345.)

Ordinarily, the interpretation by an administrator of his own regulation is controlling. But, of course, the regulation as thus interpreted must not be inconsistent with law (*Lightbody* v. *Russell*, 293 N. Y. 492, 496; *Brewster* v. *Gage*, 280 U. S. 327, 336; *United States* v. *Moore*, 95 U. S. 760, 763; *Bowles* v. *Seminole Rock Co.*, 325 U. S. 410, 413, 414). If, therefore, the rule means what the respondents say it does — that (where the landlord is a stock company) the prospective occupant need not be a stock owner and that, by merely agreeing to purchase stock and paying something on account of the purchase price, he has gained some " proprietary interest in such company ", sufficient to satisfy the condition specified in paragraph (b) of subdivision 3 of section 182 of the Public Housing Law — then I must hold the rule in that respect to be invalid.

Principles of interpretation, of course, require that a regulation be so construed, if possible, as to justify and sustain its promulgation. It may, therefore, be that the true meaning of

the rule is entirely different. It may be that the rule means that, if the landlord (as a limited dividend company operating its development as a mutual or co-operative project) issues certificates of stock, then the prospective occupant of the dwelling accommodations must be a " stockholder "; but if the company conducts its affairs in relation to its co-operator-tenants without the issuance of stock, then the prospective occupant is required to have the equivalent of the statutorily required stock-ownership, that is, a " proprietary interest in such company ". As so construed, the rule does not go beyond or contravene the statute; but it is of no aid to the respondents in this proceeding. It appears plainly from the record here that Amalgamated operates on the basis of the issuance of corporate stock to its co-operator-tenants, thus coming within the " stockholder " clause of the rule, as so interpreted. There may perhaps be still another meaning to the rule — on the very proper and usual assumption that the commissioner, when promulgating it, did not intend to exceed his statutory powers. It could, with some logic, be urged that, where the prospective occupant has fully paid for his stock (which however has for some reason not yet been issued to him), he does have such a " proprietary interest " as to entitle him to the benefits of the statute " by reason of ownership of stock ", even though he has not yet formally become a " stockholder " within the meaning of the rule (see Public Housing Law, § 175).

In the view I take of this case, it is not necessary for me to come to a definitive conclusion as to the correct meaning of the rule. For it is obvious, on the undisputed facts, that Kuperberg could not claim the " ownership of stock " in the Amalgamated, and that he was neither a " stockholder " nor a " person having a proprietary interest in such company " — in whatever sense that term may have been used in subdivision (8) of rule 7A. Accordingly, the application is granted and the certificate under review is annulled. In view of this determination, I shall not undertake to express my thoughts on the several other issues presented and briefed. My decision does not, therefore, affect any new situation that may arise in the Amalgamated Houses, where there is an order duly granted by the commissioner in aid of the occupancy of one who comes within the purview of the statute — whether that one is Kuperberg or anybody else.