Consolidated Edison Company of New York, Inc., Plaintiff, *v.* John M. Murtagh, Individually and as Chief Magistrate of the Magistrate's Court of the City of New York, et al., Defendants.

First Department, May 21, 1952.

Submission of a controversy pursuant to sections 546–548 of the Civil Practice Act.

*Colley E. Williams* of counsel (*John V. Thornton* and *Sidney L. Davis* on the brief; *Whitman, Ransom, Coulson & Goetz*, attorneys), for plaintiff.

*Arthur J. Goldsmith* of counsel (*George J. Elkins* on the brief; *Denis M. Hurley, Corporation Counsel*), for defendants.

*Per Curiam.* This is a submitted controversy as to whether the Magistrate's Court has jurisdiction to entertain a prosecution for the discharge of dense smoke in violation of section D26–1.0 of chapter 26 of the Administrative Code of the City of New York and paragraph 1.1.1 of subdivision 1.1 of section 1 of the Rules and Regulations of the Bureau of Smoke Control. The stipulation poses the case of a proceeding brought in the Magistrate's Court without any recourse to or action by the smoke control board. It is the contention of plaintiff that the law vests the smoke control board with primary jurisdiction to hear and determine charges of smoke violations and requires resort to the administrative procedure set forth in the rules and regulations before any criminal prosecution may be commenced. The defendant contends, on the other hand, that the penal provisions of the code vest the Magistrate's Court with jurisdiction to hear and determine a charge of violation of the codes and rules in the first instance.

There is undoubtedly force in the argument of plaintiff that the creation of the smoke control board and its area of authority, after seventy-five years of unsatisfactory experience in contending with the smoke menace by prosecutions instituted by the board of health, represents a new approach to the problem through continuous regulation and correction by an administrative board of experts instead of through spasmodic prosecutions before shifting individual judges in the Magistrate's Court. Certainly the contemplation of the law is continuing regulatory and corrective treatment by persons professionally and technically qualified to design and execute a corrective program. Whether it was also the contemplation to make the jurisdiction of the smoke control board primary and bar a prosecution in the Magistrate's Court in the first instance is the question before us.

We are unable to say that such was the intention. The indications are to the contrary.

Subdivision k of section D26–1.0 of the Administrative Code, as added by the local law (Local Laws, 1949, No. 5 of City of New York), provides for conviction and punishment for violation of any of the rules or regulations of the smoke control board, as well as of any order or decision of the board or its director. Section 18 of the rules and regulations makes anyone who violates any of the rules liable for the penalties imposed by the law.

It is true that the regulations are elaborate in their definitions of what are allowed and not allowed in the way of smoke emissions and in their enforcement provisions. Plaintiff appropriately points to these provisions, and particularly to paragraph 1.4.1 of subdivision 1.4 of section 1 of the regulations which provides that when any emission in violation of any of the rules is found by the director of the smoke control board, he shall order the offending owner or operator to abate the violation, giving him an opportunity to make the adjustments, additions or alterations to the equipment which are expected to be effective for abating the violation, and to section 19 of the rules which provides the appellate machinery for reviewing the decisions of the director before the board. Plaintiff claims that it is entitled to have the charge of a violation take this course and that the course may not be short-circuited by a criminal prosecution.

It would have been simple enough for the Legislature to have made the jurisdiction of the board primary or exclusive and to confine the jurisdiction of the Magistrate's Court if it had wished to accomplish that purpose. There is no such clear limitation of the jurisdiction of the Magistrate's Court in the law and rationalization is hardly permitted as a substitute. Both in the law and in the regulations it is made a penal offense to violate any of the regulations. Note, it is not merely a violation of an order or decision of the board which is punishable, but a violation of any rule or regulation. On the face of the law, therefore, an emission in violation of the regulations is prosecutable without any finding or action of the board.

It is our conclusion that the statutory pattern and provisions do not oust or confine the criminal jurisdiction, as plaintiff contends, and that judgment should be given for the defendants, holding that upon the submitted facts the Magistrate's Court has jurisdiction of the subject of the prosecution.

VAN VOORHIS, J. (dissenting). The issue on this submitted controversy involves the effect of the recent amendments to the Administrative Code of the City of New York regarding smoke control.

Prior to March 1, 1949, the discharge of dense smoke within New York City was prohibited by the Sanitary Code of the City of New York (§§ 211, 212). Violations of these sections were punishable as misdemeanors in the Magistrate's Court or by civil penalty (Sanitary Code, § 224; Penal Law, §§ 1740, 1937; New York City Charter, § 558; Administrative Code,

§ 564–6.0). Enforcement was notoriously difficult and unsatisfactory. The report of the committee on general welfare of the city council stated in 1949: " The Department of Health has been charged with the enforcement of the present laws dealing with smoke and soot, but in the 75 years [of enforcement] by the Health Department, the condition has gradually deteriorated until the condition of air pollution has now become a menace to health and property." This comment was less in criticism of the health department than an assertion of the impracticability of the former procedure. To remedy that situation, the committee recommended the adoption of Local Law, 1949, No. 5 of City of New York, which was enacted by the city council into section D26–1.0 of chapter 26 of the Administrative Code. The former provisions of the Sanitary Code were thereby superseded. The entire subject of smoke control, including punishment for violations, is now covered by the Administrative Code and by the rules and regulations made pursuant thereto by the smoke control board.

The policy declared by the new local law is " to establish and maintain active and continuing supervision " in this field. The smoke control board consists of five members, three of whom are required to be professional engineers, one experienced in fuel and smoke control, one a mechanical engineer, and the third a stationary engineer. Technical knowledge, enabling an informed and practical approach to be made to this complicated problem, was to be substituted for a mere commandment that there shall be no smoke in the city of New York. Experience had proved that clear atmosphere in a large city is a desirable which is not produced by the power of fine and imprisonment alone.

The newly created bureau of smoke control has a director, who is " the executive officer in charge of the bureau " required to investigate all emissions of smoke and kindred products into the open air. Under the commissioner of housing and buildings, " the director shall enforce all laws, rules and regulations with respect to such emissions " (§ D26–1.0, subd. e). The smoke control board is from time to time to adopt and amend rules regulating and controlling such emissions (subd. g). The commissioner, the board and the director are empowered to compel the attendance of witnesses (subd. f), and applications are required to be made to and approved by the director to construct, install, alter or operate fuel-burning equipment designed to discharge combustion products into the open air (subd. h). Any person aggrieved by an order or decision of the director

may appeal to the smoke control board, and the taking of such an appeal stays the director's determination until the appeal has been decided (subd. j).

The final subdivision (k) is entitled " Penalties ", and is the one with which we are immediately concerned. It supersedes the sanctions which formerly were provided to enforce sections 211 and 212 of the Sanitary Code. The new subdivision (k) states that violations of rules or regulations adopted by the smoke control board shall be punishable by fine or imprisonment.

The object of the penalties thereby authorized is to enforce and not to by-pass compliance with the new and more effective procedure contemplated by this amendment to the Administrative Code. When the smoke control board adopted, as it did, specialized and scientific regulations affecting combustion in factories, public utilities and other plants or establishments, and opportunity was given to appeal to it from decisions by the director, the intention was that this procedure should be followed, instead of reverting to the outmoded and ineffectual legal machinery that the general welfare committee of the city council found had been deteriorating for seventy-five years.

Although paragraph 1.1.1 of subdivision 1.1 of section 1 of the rules and regulations of the board follows the pattern of section 211 of the Sanitary Code in providing that " No person shall cause, suffer or allow dense smoke to be emitted into the open air from any fuel burning equipment ", of which plaintiff is now accused in the Magistrate's Court, paragraph 1.4.1 (not contained in the Sanitary Code) states that " When any emission in violation of any of these rules and regulations is found by the director, he shall order the offending owner or operator to abate the violation, provided, however, that on receipt by the director of a stipulation by the owner or operator that he will immediately undertake adjustments, additions, or alterations to equipment which are expected to be effective in abating the violation, the director may stay the effective date of such order by not more than sixty (60) days."

This mandatory rule marks the difference between the old and the new procedures. It implements the director's duty imposed by subdivision e of section D26–1.0 of the Administrative Code to investigate the emission into the open air of smoke, in connection with which he may compel the attendance of witnesses, and shall take such other steps as are necessary in order to stop the practice. The object of paragraph 1.4.1 of the rules is to require the director to give notice of violations before prosecuting in court, to the end that the owner or

operator shall be obliged immediately to undertake adjustments, additions or alterations to equipment which are expected to be effective in abating the violation. If the owner or operator stipulates to do so, the director is empowered to stay the effective date of his order to abate the emission. If he declines to grant the stay, the owner or operator may appeal to the smoke control board. Such an appeal may also be taken from the director's order to abate the violation, which is stayed pending the appeal. The object of these steps is to secure a workable and effective abatement of the emission of smoke, which cannot always be accomplished overnight.

If the defendants' position on this submission be correct, that prosecutions in the Magistrate's Court may go forward simultaneously with the other steps to be taken for smoke abatement, then plaintiff or any of the 650,000 persons in the city of New York subject to these rules is liable to be fined or confined in jail during the sixty days in which the director may elect to extend the time for abating the violation, or during the period in which the director's order is stayed while an appeal is pending to the board. The payment of fines was not contemplated as an ordinary operating expense of the Consolidated Edison Company, nor were its officers or employees intended to serve time in the workhouse while the director or the board of smoke control are considering, under other portions of the rules, the engineering problems involved in stopping the emission of smoke without closing its plants.

Criminal or quasi-criminal prosecution, as a separate primary remedy, would thus deny to the owner or operator the right to an administrative order or decision by the director in his discretion to extend the time for compliance, with express right of appeal to the board (Administrative Code, § D26–1.0, subd. j; rules, § 19), and would deny to the city the benefits of the new system of control by reverting to the old method which the city council's committee reported has failed so badly. The owner clearly has the right to present to the director (and by appeal to the board, if necessary) evidence of a sound corrective program justifying the granting of such a stay, and it is in the interest of the city that this be done.

The new section of the Administrative Code contains no intimation that penalties are authorized for any purpose other than to enforce the new and more scientific procedure, in the case of stationary plants, after applying engineering standards to be formulated in the rules. If, for example, an owner or operator of fuel-burning equipment takes no steps to rectify

his situation, or if he declines to make reasonable alterations approved by the director, subject to appeal to the smoke control board, then the sanctions authorized by the Administrative Code may be imposed in full rigor. Until the administrative remedies have been exhausted, however, prosecution under the " Penalties " sections would, unless perfunctory, defeat the object of the enactment.

The last statement is demonstrated by referring to some of the particular rules and regulations. The pending prosecution is for the discharge of dense smoke, which is defined in the rules as smoke that is incapable of being seen through at the point of emission. Owners or operators of fuel consuming equipment may be prosecuted under clause 1.1.3.1, which prohibits the emission of smoke, other than dense, for more than a period of two continuous minutes in any one hour. It would appear that plaintiff might have been prosecuted a fortiori for emitting smoke other than dense. Such smoke is defined as any " Emission from a chimney, stack or open fire, or from heating of fuel or refuse ", and this includes " dust " defined as " Air-borne solid particles. Fly ash, cinders, soot and all other solid particles are included in this definition " (§ O). Thus, if defendants' present position be upheld, the emission of dust for more than two minutes in an hour is absolutely prohibited, and the person responsible is subject to fine or imprisonment without further ado. Nevertheless, subdivision 1.2 allows the emission of dust for the generation of steam on a graduated scale according to the number of pounds of dust per thousand pounds of steam generated. Manifestly, a complex engineering question may be presented concerning whether the quantity of dust emitted is justified by the steam generated, which must be resolved in the particular case by the director or the smoke control board. Nevertheless, under defendants' theory, officers and employees of a corporation burning coal for the usual purpose of generating steam would be liable to fine and imprisonment if the emission of dustsmoke were observed by a smoke inspector, while the engineers were determining whether the quantity of dust emitted per thousand pounds of steam was warranted, according to the table, by the pounds of steam generated per hour, and, if not warranted, then while they were determining what changes in operation or equipment were necessary. An owner or operator is not intended to be punished, without the application of engineering standards, on the mere visual observation of a smoke inspector.

The structure of the rules and regulations adopted by the board of smoke control renders their enforcement incompatible with primary jurisdiction in the Magistrate's Court. The majority opinion speaks as though these rules, interpreted by themselves, require the conclusion that the whole intricate procedure which they establish was intended by the board of smoke control to be capable of being sidetracked, and that the question at issue is simply whether such evasion exceeds the power conferred by the Administrative Code. On the contrary, these rules show that this is not their purpose, and that paragraph 1.1.1 (on which the prosecution of plaintiff in the Magistrate's Court is based) must be construed as limited by paragraph 1.4.1 and clause 1.1.3.1, and other sections of the rules which are inconsistent with recourse in the first instance to the Magistrate's Court. They must be construed as an integrated whole.

These rules require an informed understanding of the problems of fuel combustion. They can be understood only by persons having the technical training and experience which the Administrative Code requires of a majority of the members of the smoke control board. The only reasonable conclusion is that primary jurisdiction of the subject was vested in the bureau of smoke control and only subsequently in the criminal courts. The penal provision is to enable punishment of the owner or operator who remains intractable after the administrative procedure has been pursued. Penalties would be applied, for example, in case of violation of the director's order sealing equipment under subdivision 1.5, after notice has been given of three or more violations within any consecutive twelve-month period, following the hearing described in paragraph 1.5.1.

The cases requiring the exhaustion of administrative remedies extend to criminal prosecution as well as to civil actions and proceedings (*United States* v. *Pacific & Arctic Co.,* 228 U. S. 87; *People* v. *Sagat,* 204 App. Div. 485; vom Baur on Federal Administrative Law, pp. 197–198). In *People* v. *Sagat* (*supra*) this court said (p. 487): " There would seem to be greater reason to require an opportunity to abate a violation prior to a criminal prosecution than prior to a civil action for a penalty.''

If it be contended that such an interpretation of these rules and regulations is not conducive to effective enforcement in the case of mobile installations, such as steamships, locomotives or steam cranes, the answer is that the smoke control board did not intend to emasculate the new procedure in its application to smoke from utility plants or other stationary installa-

tions, merely for the reason that moving installations have been included in the same category. The quantity of coal consumed by stationary installations greatly exceeds the amount burned by moving equipment. It may well be that smoke control would be promoted by amendments to the rules and regulations of the smoke control board, providing a different procedure for mobile installations, which could undoubtedly be done under the authority of this section of the Administrative Code, but the smoke control board has not as yet done so, and the rules and regulations which it has adopted must be construed as they are written, in the light of their principal objects and purposes.

Declaratory judgment should be rendered that the Magistrate's Court lacks jurisdiction upon the submitted facts of the prosecution now pending, prior to the exhaustion of the administrative remedies provided by section D26–1.0 of chapter 26 of the Administrative Code of the City of New York and the rules and regulations adopted thereunder by the board of smoke control.

PECK, P. J., COHN and HEFFERNAN, JJ., concur in *Per Curiam* opinion; VAN VOORHIS, J., dissents in opinion.

Judgment directed in favor of the defendants, with costs. Settle order on notice.