Howard T. Hogan, J.
Each of the four plaintiffs operates a nursery school and kindergarten. They bring this action for a judgment declaring unconstitutional, null and void section 195 of the ‘ ‘ Regulations of the Commissioner ’ ’, adopted by the Board of Regents of the State of New York on March 1, 1957, and the “ G-eneral Regulations ” of the Commissioner of Education, adopted by him on March 1, 1957, to implement the said section 195, and they now move for summary judgment. Defendants cross-move for summary judgment dismissing the complaint. No material issues of facts are raised by the pleadings.
The aforesaid section 195 provides that a nonpublic nursery school and/or kindergarten may be registered by the New York State Education Department if it shall present evidence of compliance with the following conditions: Satisfactory buildings, rooms, facilities and equipment, teachers whose training is substantially equivalent to that of public school teachers, an adequate curriculum and teacher-pupil ratio, provisions for parent co-operation, minimum age of pupils of three years, an entrance age for both nursery school and kindergarten which is within one month of that required by the local public schools, and a yearly term substantially equivalent in length to that required of public schools. It further provides for annual reports from each registered school, continuing review of its advertising and conduct, and revocation of registration for failure to comply with said conditions. Such registration is purely voluntary.
The Regulations of the Commissioner, who is the executive officer of the Board of Regents, set up the mechanism of registration, supplement the Regulations of the Board of Regents and provide that when a school has been registered it shall receive from the Education Department a “ Certificate of Approval ’ ’ which may be displayed on its premises as long as it is valid.
The gravamen of the complaint is found at paragraphs “20” through “25” thereof which may be summarized as follows:
1. The registration program was designed and adopted to influence the public not to deal with unregistered schools.
2. The regulations governing entrance to first grade discriminate against children from unregistered kindergartens.
3. The regulations are unconstitutional in that they deny plaintiffs the equal protection of the laws of New York State, they are discriminatory, they are unlawful delegation of legislative power, and they violate the Fourteenth Amendment of the United States Constitution.
*127 4. The regulations injure the reputation and standing of unregistered schools.
Plaintiffs further allege that a list of “registered” schools has been distributed to local public school administrators and that the registration program is designed and was adopted for the purpose of influencing the general public not to deal with unregistered nursery schools and kindergartens, and of coercing such schools to become registered and thus to meet the conditions set up by the commissioner.
Although the defendants deny these allegations, including the charge that the commissioner discriminates in favor of children from registered nonpublic kindergartens in the matter of admission to the first grade, they have offered to the court as an exhibit a bulletin dated August, 1958, in which it is stated:
“ The Division of Elementary Education recommends that any child under 5 years 9 months of age on September 1 (but older than 4 years 9 months on September 1) shall be enrolled in the kindergarten unless that child has attended and satisfactorily completed a full year’s work in a kindergarten which provides equivalent instruction to that of the local school. [Italics supplied.]
4? ^
“ Within certain legal limitations the age of entrance and the grade placement of the children are matters for the local education authorities to decide. The local board of education: * * * “3. May require any child entering school under the age of 6 to attend kindergarten and complete a year of the same provided that the child has not completed a year in a kindergarten substantially equivalent to that of the local public school. [Italics supplied.]
* * *
1 ‘ The Commissioner of Education has ruled that chronological age cannot be the sole determiner of promotion from the kindergarten to first grade. Chronological age may be the sole criterion for entrance to kindergarten (within the limits heretofore mentioned). The Commissioner has also ruled that any child who has attended and satisfactorily completed a year’s work in a kindergarten which provides equivalent instruction to that of the local school must be enrolled in grade 1.” [Italics supplied.]
“ C. Implications for Entrance of Children to First Grade
“ The program of any nonpublic kindergarten registered by the State Education Department is considered equivalent *128 to that of the local public school. If any child has attended and satisfactorily completed a full year’s work at a registered nonpublie kindergarten, the local public school must admit the child to the first grade. [Italics supplied.] * * * “ A list of registered nonpublie kindergartens is now available to superintendents of schools. A revised list will be issued in May 1959.
# # #
“ D. Unregistered Nonpublie Kindergartens
“ When a child has completed a full year’s work in an unregistered nonpublic kindergarten and his parents seek his admission to first grade in the public school, the local school authorities shall determine whether or not the kindergarten attended provides substantially equivalent instruction. If the program is not judged by the local school authorities to be substantially equivalent to that of the local school, the child may be placed in the public school kindergarten. If the unregistered nonpublie kindergarten which a child has attended for a full year provides equivalent instruction, the child should be placed in the first grade. If after a reasonable length of time the child has not made satisfactory progress in the first grade, the school may consider the advisability of placing the child in the kindergarten. [Italics supplied.] ”
The court interprets these directives as follows:
Local public school authorities must admit to the first grade any child who has attended and satisfactorily completed a full year’s work at a registered nonpublic kindergarten, if it be 5 years, 8 months or more on September 1, upon entering the first grade (since both the rules of the Board of Regents [§ 195, subd. 1, par. h] and of the Commissioner [General Regulations of the Commissioner of Education, § 195, subd. 1, par. h] provide that the age at entrance to a registered nonpublic kindergarten shall be within one month of that required by the local school system [See “ Entrance to First Grade ” in the above-quoted bulletin of August, 1958.]).
They may not admit a child of the same age to first grade upon completion of a full year at an unregistered nonpublic kindergarten unless and until they have determined if such unregistered kindergarten provides instruction substantially equivalent to that of the local public school. If it does, 1 ‘ the child should be placed in the first grade.”
Such a rule which makes mandatory the admission of a child of 5 years and 8 months if he has attended a registered nonpublic kindergarten, leaves to the discretion of a local adminis *129 trator the admission of a child of the same age from an unregistered nonpublic school, even though the instruction he received be found to be equivalent or even superior to that offered by the local public kindergarten, is clearly arbitrary, discriminatory and improper. No appeal to the courts lies from an abuse of that discretion, since section 310 of the Education Law provides that such an appeal shall be to the Commissioner of Education, the promulgator of the rule, and that his decision shall be final and conclusive.
Despite the denial of this allegation of paragraph “ 21 ” of the complaint, the defendants, by the aforesaid exhibit, have established to the satisfaction of the court that the provision concerning the admission of children from registered nonpublic kindergarten unlawfully discriminates against others. Plaintiff is entitled to partial summary judgment accordingly.
As to the remainder of the rules, however, it appears to the court that (1) they are within the power of the defendants to enact, (2) they are not discriminatory, and (3) in any event, plaintiffs are not so aggrieved by them as to give the right to maintain this action.
'Section 207 of the Education Law confers upon the defendant Board of Begents the power to “ exercise legislative functions concerning the educational system of the state, determine its educational policies, and, except, as to the judicial functions of the commissioner of education, establish rules for carrying into effect the laws and policies of the state, relating to education, and the functions, powers, duties and trusts conferred or charged upon the university and the education department.”
This broad delegation of power furnishes authority for the enactment of section 195 (supra). The statute is not directly attacked in the complaint on any ground, and for the purposes of this motion must be regarded as valid and proper. The court must presume it so in the absence of clear and convincing proof to the contrary, and may not pass upon its constitutionality when the issue has not been raised by the pleadings. (Matter of Ingersoll v. Curran, 188 Misc. 1003, affd. 297 N. Y. 522.) Having failed to do so, plaintiffs cannot be heard to question it now by memorandum of law or by oral argument, for they are confined to the theories which are the basis of their complaint (Potolski Int. v. Hall’s Boat Corp., 282 App. Div. 44, 47).
The statute is sufficiently broad to encompass the institution by the Board of Begents of a noncompulsory registration program for private nursery schools and kindergartens.
The Commissioner of Education is the chief administrative officer of that body (Education Law, § 101). He is charged with *130 the execution of all educational policies determined upon it (Education Law, § 305), and has the implied power to make rules, within the limits set by it, for this purpose.
Does section 195 furnish- adequate standards for him to follow? It provides that a nonpublic nursery school or kindergarten, to qualify; for registration, must employ “ Teachers whose training is substantially equivalent to that required of teachers engaged in similar work in public schools ” (subd. 1, par. c), that it must offer “ A curriculum which adequately provides for the physical, mental and emotional development of the pupils ” (subd. 1, par. d), “ An age of entrance for both nursery school and kindergarten which is within one month of that required by the local public schools ” (subd. 1, par. h), etc. ■
The general principle governing the delegation of power by legislative body to an administrative or executive official for the purpose of carrying out his policies and directives has been stated as follows: “ [A legislative body] does not abdicate its functions when it describes what job must be done, who must do it, and what is the scope of his authority. In our Complex economy that indeed is frequently the only way in which the legislative process can go forward.” (Bowles v. Willingham, 321 U. S. 502, 515.) And “ Where 1 standards are provided which, though stated in general terms, are capable of a reasonable application and are sufficient to limit and define the board’s discretionary powers,’ the delegation of such powers to the administrative official by the" Legislature is' lawful ”. (Tropp v. Knickerbocker Village, 205 Misc. 200, 211, affd. 284 App. Div. 935, quoting Aloe v. Dassler, 278 App. Div. 975, affd. 303 N. Y. 878. See, also, Fox v. Adams, 134 N. Y. S. [2d] 534, 538.)
Section 195 provides both general and specific standards to limit and define the powers and duties of the Commissioner of Education. He has adopted a set of rules to carry out the intent of the Board of Begents as expressed in that enactment. These rules, with the exception of the provision concerning admission to first grade from nonpublic kindergartens, (dealt with heretofore) appear to be a proper implementation of section 195 by -the executive officer charged with its administration. Both the delegation of authority and the exercise of that authority are held to be warranted under the circumstances.
It likewise appears that these rules and regulations are a reasonable exercise of the defendant’s powers to determine and put into effect the educational policies of the State and that they are not arbitrary or "capricious.
*131 Finally, it has not been shown to the court that any legal rights of the plaintiffs have been infringed or that they have been in any way denied the equal protection of the law.
This registration program is purely voluntary. It makes no demands upon these plaintiffs to conform to a curriculum prescribed by the Department of Education, to employ only teachers with a particular background or training, nor to provide any particular equipment or facilities for their pupils. With the provision concerning entrance to first grade excised, it does no more than offer private nursery schools and kindergartens the services of the Department of Education in conducting a periodic inspection of their facilities, and, if such inspection reveals that these facilities meet the standards prescribed by the department, it offers to certify to this fact.
The complaint contains no factual allegations to support the charge that these rules were designed to coerce the plaintiffs into conformity with the department’s standards, or to place in a more favorable competitive position those who do comply with such standards. In the absence of positive proof this court may not presume the motives of part of the Department of Education to be improper. Defendants are not branding plaintiffs’ schools as inferior or nonconforming. If, conceivably, some parents might misinterpret the absence of a Department of Education Certificate as evidence of inferiority, when, in fact, it is no such thing, defendants cannot be held legally responsible for this false conclusion. Plaintiffs are free to correct this error by any proper means they choose.
They are not denied the equal protection of the law. They are afforded the same rights as others of their class. Certification is not being thrust on them nor wrongfully withheld. It carries with it no special privilege. At. most, no more can be said (except for the aforesaid provision for admission to first grade, which the court has adjudged to be improper) than that registration may have the effect of inducing proprietors of some private nursery schools and kindergartens to provide and maintain facilities which are not inferior to those of their public counterparts. No illegal force, coercion or duress is applied. No discrimination has been shown nor does it appear to the court that any other constitutional right of these plaintiffs has been violated.
Plaintiffs rely upon the decision of the Court of Appeals in Packer Collegiate Inst. v. University of State of New York (298 N. Y. 184). The court has made an analysis of that case and is of the opinion that it is clearly distinguishable from the *132 case at bar and that the law set forth therein is not applicable to the facts here present.
In the case cited, former section 625 of the Education Law was under attack. Paragraph 5 of subdivision B thereof provided that no one other than public school authorities or an established religious group could establish or maintain a nursery school and/or kindergarten and/or elementary school in New York State unless it were registered under the regulations prescribed by the Board of Regents. It provided for the payment of a registration fee, the issuance of a certificate of registration valid for a period of two years, with renewal biannually thereafter upon payment of a renewal registration fee. It was further provided (§ 641) that a violation of this requirement was punishable criminally.
In holding the statute to be an unconstitutional delegation of legislative power in violation of section 1 of article III of the New York State Constitution, the court said (p. 189): “ The statute before us is nothing less than a attempt to empower an administrative officer, the State Commissioner of Education, to register and license, or refuse to register and license, private schools, under regulations to be adopted by him, with no standards or limitations of any sort. ’ ’ And at page 190: ‘ ‘ The commissioner is left ‘ without check or guidance ’ to do what he will with these schools; and the statute’s validity must be judged not by what has been done under it but ‘ by what is possible under it ’ ”. And at pages 191-192: ‘ ‘ This is no small or technical matter we deal with here. Private schools have a constitutional right to exist, and parents have a constitutional right to send their children to such schools ”.
The first and most obvious difference between the aforesaid former section 625 of the Education Law and the rules of these defendants is that the former made registration compulsory, and hence made compulsory compliance with the commissioner’s rules, no matter how arbitrary or capricious, whereas the latter places registration upon a purely voluntary basis. A nursery school or kindergarten need not register in order to operate freely and without restriction.
The second difference is that the Packer Collegiate Institute decision dealt with a statute unconstitutional because it delegated legislative powers to an administrative official without prescribing standards and safeguards, whereas in the case at bar the statute conferring authority is not under attack, but only the rules which were adopted under that authority. They must stand or fall on two tests: (1) were they within the *133 authority granted, and (2) are they reasonable? The court has found that they meet both tests.
It may be argued that if the provision for the preferential treatment of children from registered nonpublic schools is removed, certification will have lost its raison d’etre, and the chief inducement to seek registration will have been destroyed. The court is not concerned with that, nor with the desirability or wisdom of the registration program. It merely determines that the defendants have the power to enact these rules and regulations, that such enactments, except as indicated, do not infringe or impair any legal rights of the plaintiffs, and that since they are not aggrieved, they may not maintain this action.
Accordingly, summary judgment is granted in favor of the plaintiffs to the extent that the direction of the defendant Commissioner of Education which gives a preference to children from registered private kindergartens in admission to the first grade of a public school is adjudged to be discriminatory, improper, and a violation of the constitutional rights of others. Summary judgment is granted to the defendants dismissing every other portion of the complaint (Wohl v. Miller, 5 A D 2d 126, 133, 134).