Birdie Amsterdam, J,
Defendants move for an order pursuant to rule 112 of the Buies of Civil Practice and section 476 of the Civil Practice Act for judgment on the pleadings dismissing the complaint for insufficiency. Plaintiffs have moved for an order granting judgment on the pleadings pursuant to rule 112 of the Buies of Civil Practice for the relief demanded in the complaint upon the ground that the denials raised by the answer and amended answer and the first defense as to chapter 47 of the New York City Charter and. the second defense as to title A of chapter 47 of the Administrative Code of the City of New York and the third defense as to the Bules and Begulations of the Department of Air Pollution Control and the fourth defense As to the alleged complaint and inspection of the premises of the plaintiff West Bronx Auto Paint Shop, Inc., are insufficient.
Plaintiffs are engaged in the auto-painting business. Used cars are painted within a metal spray booth, one at a time, with a spray gun operated by air pressure. Such equipment and ventilating system are installed in accordance with the Buies of the Board of Standards and Appeals and of the New York State Labor Board. Plaintiffs dispute that the matter of overspray and vapors which may escape into the outer air as a source of air pollution is within the province and jurisdiction of the Department of Air Pollution, or that the department may require the filing of applications for approval of equipment, and they request that the court so declare. More specifically, the plaintiffs seek a judgment pursuant to section 473 of the Civil Practice Act, declaring that chapter 47 of the City Charter and the Administrative Code and the Bules and Begulations promulgated under the authority of chapter 47 are unconstitutional and invalid as far as they are claimed to be applicable to the plaintiffs’ paint-spraying operation, and that the plaintiffs are not subject to the jurisdiction of the defendant Commissioner in any respect in that the statutes and regulations under which he claims jurisdiction are not binding upon the plaintiffs.
The Department of Air Pollution Control was established in 1952 (New York City Charter, § 1071 et seq.; Administrative Code, § 1072-1.0 et seq,; Local Laws, 1952, Nos. 114,115 of City of New York) and was so established pursuant to the home rule provision of section 12 of article IX of the New York State Constitution, section 11 of the City Home Buie Law and section 21 of the New York City Charter. It is not disputed that the Legislature may delegate to the municipality the power to deal with the control of air pollution. The predecessor of the depart *31 ment was the Bureau of Smoke Control established by Local Law No* 5 of 1949 which, in turn, superseded the provisions on the -subject then existing in the Sanitary Code (Consolidated Edison Co. of N. Y. v. Murtagh, 280 App. Div. 221). Plaintiffs do contend that the local laws and regulations are almost exclusively concerned with air pollution resulting from fuel-burning equipment and other combustion processes. Insofar as they may refer and apply to the spraying operation they are too vague and indefinite to satisfy constitutional requirements and this is, so they say, because in the transfer by succession of the powers of the Bureau of Smoke Control to the Department of Air Pollution Control there was no substantial change in the language of the enacting law and regulations promulgated pursuant to conferred authority*
The department is headed by the Commissioner of Air Pollution Control who has “ jurisdiction to regulate and control the emission into the open air of harmful or objectionable substances, including but not limited to smoke, soot, fly ash, dust, fumes, gas, vapors, odors and any products of combustion or incomplete combustion resulting from the use of fuel burning equipment or from the heating of fuels or refuse.” (New York City Charter, § 1072.) The quoted portion of that section is what plaintiffs rely on and they assert that jurisdiction is thus limited 1 ‘ to emissions 1 resulting from the use of fuel burning equipment or from the heating of fuels or refuse ’. No other processes are mentioned ”. At least plaintiffs’ quoted excerpt should have been, for better understanding, as follows: emissions of £ £ any products of -combustion or incomplete combustion resulting from the use of fuel burning equipment or from the heating of fuels or refuse ”. By so doing it becomes manifest that combustion relates to and modifies only ££ any products ” and not any of the preceding enumerated substances, smoke, soot, fly ash, dust, fumes, gas, vapors, odors. £ ‘ Any ’ ’ covers all; the listed substances are either distinct and apart from ££ any products ” or the listing is wholly redundant. Even the specific substances are not limited to those listed. An incomplete list of ££ any products ” is an absurd result reached by the unwarranted reference of combustion created products back to the emission of the listed substances into the air. The absurdity is further demonstrated by plaintiffs’ reference to the fact that the coverage of the Commissioner’s jurisdiction was an enlargement of the jurisdiction of the predecessor Director of the Bureau of Smoke Control since added thereto were£ £ dust, fumes, gas, vapors and odors ”. What need to add these as ££ further products of combustion ” if as already listed the emissions are *32 not thereby limited and the products of combustion are in any event “ any products ”? Apart therefrom, plaintiffs contend that the local laws and regulations, insofar as it is claimed they apply to paint-spraying operation, are invalid on the ground that no standards are supplied for the installation and operation of spraying equipment, that they do not provide sufficient procedural safeguards, that the collection of filing fees for spraying installation is illegal on the ground that such fees are not provided in the statutes or in the rules and regulations of the department, and that the local laws and regulations claimed to apply to the paint-spraying operation are invalid in that they are not co-ordinated with existing regulations of other agencies.
As already indicated, it is not disputed that delegation of legislative authority to the municipality to deal with the control of air pollution is a proper exercise of legislative power under the Constitution. It was so held in People ex rel. Doscher v. Sisson (222 N. Y. 387, 398) where the court stated: “ It is established law that a legislature may delegate to an executive officer the power to determine facts and conditions upon which the operation of a statute depends, without violating the constitutional prohibition against the delegation of legislative function. ’ ’ Under such conferred authority such control is of ancient vintage antedating by decades the inclusion of such supervision in the Sanitary Code as early as 1902 (see Department of Health v. Edling Brewing Co., 38 Misc. 537; People v. New York Edison Co., 159 App. Div. 786). As with the explosion of water pollution, air pollution has become an increased menace. The power exercised by the Department of Health under the Sanitary Code was transferred to the Bureau of Smoke Control within the Department of Buildings created by Local Law No. 5 of 1949 (Administrative Code, § D26-1.0). The declaration of policy as contained in that section, subdivision a thereof, is as follows: “a. It is hereby declared that pollution of the atmosphere by smoke, soot, fly ash, products of combustion, incomplete combustion or heating of fuels or refuse and certain other emissions into the atmosphere, is a menace to the welfare and comfort of the people of the city and a cause of extensive damage to property. For the purpose of controlling and reducing atmospheric poEution, it is hereby declared to be the poEcy of the city to establish and maintain active and continuing supervision of combustion processes, and of the emission :of certain harmful or objectionable elements into the atmosphere. * *
It is to be noted that products of combustion and other emissions are not one and the same thing. Bather, they are separate, *33 distinct and cumulative and arise from any source. However, by subdivision g of section D26-1.0, it was provided: “ g Eules. — The board shall from time to time adopt and amend rules and regulations regulating and controlling the emission into the open air from any source * * * of smoke, soot, fly ash, products of combustion or incomplete combustion resulting from the use of fuel burning equipment or from heating of fuels or refuse, dusts arising from the transportation, handling or processing of fuels and the installation, construction or alteration of equipment giving forth such emission into the open air. * * The power to control was thus limited to contaminants coming from any source, but resulting from the use of fuel-burning equipment. Such limitation was, however, removed by the adoption of charter sections 1071-1075, effective November 23, 1952, and to the Commissioner was given “ Jurisdiction to regulate and control the emission into the open air of harmful or objectionable substances, including but not limited to smoke, soot, fly ash, dust, fumes, gas, vapors, odors and any products of combustion or incomplete combustion resulting from the use of fuel burning equipment or from the heating of fuels or refuse. * * (§ 1072.) and to the Board of Pollution Control was given jurisdiction “ to adopt and amend rules regulating or prohibiting the emission into the open air from any source, * * * of any harmful or objectionable substances, including, but not limited to, smoke, soot, fly ash, dust, fumes, gas vapors and odors, and the installation, construction or alteration of equipment giving forth such emissions into the open air in so far as such emissions are affected thereby. * * * .” (§ 1075.) Here there is clearly enunciated the policy to control all emissions of a harmful or objectionable substance from any source and over any equipment giving forth such emissions. Change in conditions in this residential and industrial metropolitan area which at one time required the control of smoke only as a health measure will necessarily require, from time to time, the inclusion of other emissions and from additional sources, not alone because of the growth of emissions in number, character and density, but because of the increase of smoke emissions and other substances which have been present at all times through the years of this evolution of air-pollution control. There can be no doubt from the breadth of the language employed, that the legislative intent as evinced by the 1952 enactments, was to reach air pollution in its totality from whatever source and from whatever equipment or industrial process. To this end the Legislature required that the Commissioner of Air Pollution “ shall have recognized profes *34 sional education, training and experience in the fields of public health, sanitation, industrial hygiene, and air pollution control or the equivalent of all of the aforementioned or he shall be either a professional, mechanical or stationary engineer.” (New York City Charter, § 1071.)
The Board of Air Pollution Control (§ 1073) consists of the Commissioner of Air Pollution Control, the Commissioner of Health, the Commissioner of Housing and Buildings, or their respective duly authorized representatives as ex-officio members and of two additional members who shall have recognized professional education, training and experience in the fields of public health, sanitation, industrial hygiene and air pollution control or the equivalent thereof, or they shall be either professional, mechanical or stationary engineers.
The powers and duties of the Commissioner are “ to regulate and control the emission into the open air of harmful or objectionable substances, including but not limited to smoke, soot, fly ash, dust, fumes, gas, vapors, odors and any products of combustion or incomplete combustion resulting from the use of fuel burning equipment or from the heating of fuels or refuse. ’ ’ (§ 1072.) In addition, he is required to enforce all laws, rules and regulations with respect thereto, to make investigations and studies for the purpose of enforcement and control, with power to compel the attendance of witnesses who shall testify under oath and to recommend to the Board of Air Pollution Control the adoption of rules and amendments necessary or proper for elimination or control of air pollution (New York City Charter, § 1072; Administrative Code, § 1072-5.0).
The power of the Board of Air Pollution Control is “ to adopt and amend rules regulating or prohibiting the emission into the open air from any source, whether fixed or movable, and whether on land or water, of any harmful or objectionable substances, including, but not limited to, smoke, soot, fly ash, dust, fumes, gas vapors and odors, and the installation, construction or alteration of equipment giving forth such emissions into the open air in so far as such emissions are affected thereby. The board shall have power to compel the attendance of witnesses and to take their testimony under oath. The board may fix fees for the filing of any document, for the issuance of permits and for the examination of plans except as otherwise provided by law. ” (§ 1075.)
Section 1072-3.0 of the Administrative Code provides: “ No person shall construct, install or alter any equipment, including fuel-burning equipment, capable of emitting into the open air any harmful or objectionable substance including but not limited *35 to smoke, soot, fly ash, dust, fumes, gas, vapors or odors, until an application, including plans and specifications, has been filed with the department and an installation or alteration permit issued by the commissioner, in accordance with the rules of the board except that the rules of the board or, subject to any such rules, the commissioner may dispense with the filing of applications, plans and specifications when deemed unnecessary.” Section 1072-4.0 provides: “No person shall use or cause to be used any such new or altered equipment for which an installation or alteration permit was required or issued until an operating permit has been issued by the commissioner.” The breadth and the depth of coverage is exemplified by rule 1.3.1 adopted by the Board of Air Pollution Control which is as follows: “ Rule 1.3.1 No person shall cause, suffer or allow to be emitted into the open air from any fuel burning equipment, internal combustion engine, locomotive, vehicle, incinerator, open fire, floating equipment, premises, industrial process or from any other source, within the City of New York, or upon waters within the jurisdiction of said City, any air contaminant, harmful or objectionable substance, including but not limited to smoke, soot, fly ash, dust, fumes, gases, vapors, nuisance odors that may be a detriment to the property of others or that may be a nuisance to any person not being therein or thereupon engaged.” and by the following pertinent portion of Rule 1.5.1: 11 Rule 1.5.1 When any person owning or controlling any premises, motor vehicle, floating equipment or portable equipment, including locomotives, has been previously notified of three or more violations of this (Rule) within any consecutive twelvemonth period, in respect to the emission of smoke, soot, dust, fumes or other air contaminent ’ ’. It becomes clear, therefore, from the statement of policy, the duties and powers conferred on the Commissioner and the board, and the breadth and depth of the air-pollution objective that the clear intent as finally evolved is the control and supervision of emissions into the open air of harmful and objectionable contaminants. In speaking of the delegation of power by the Legislature to administrative and executive officials, the court had this to say in Jokinen v. Allen (15 Misc 2d 124,130): “ ‘ In our complex economy that indeed is frequently the only way in which the legislative process can go forward.’ (Bowles v. Willingham, 321 U. S. 502, 515.) And ‘ Where ‘ ‘ standards are provided which, though stated in general terms, are capable of a reasonable application and are sufficient to limit and define the board’s discretionary powers,” the delegation of such powers to the administrative official by *36 the Legislature is lawful ’. (Tropp v. Knickerbocker Village, 205 Misc. 200, 211, affd. 284 App. Div. 935, quoting Aloe v. Dassler, 278 App. Div. 975, affd. 303 N. Y. 878.) ”
In this age of fallout, invention, automation, population increase, ever-increasing vehicular movement, multiplication of products and processes and pollution of the air, land and sea reaching dangerous proportions, it is not to be concluded from the existing statutes and rules that the legislative intent has not kept pace with industrial development and its consequent problems affecting the subject problem, or that administrative and executive agency in the promulgation of rules and regulations has not done so. Nor can it be said that the general objectives as thus expressed and as thus placed for their execution in the hands of a Commissioner and of board members of high qualification and experience are not capable of reasonable application or do not sufficiently and properly limit and define the discretionary powers. The purpose is to control and to reduce any air pollution by virtue of contaminants from any source, to “ establish and maintain active and continuing supervision of combustion and other processes and installations contributing to atmospheric pollution and of the emission of harmful or objectionable substances into the atmosphere. * * (Administrative Code, § 1072-1.0.)
We reach the question whether there have been safeguards or standards supplied to give notice as to the particular act or action made subject of punishment in the event of violation. In this connection, plaintiffs question whether the definitions of dust, fumes, odor and vapor as set out in section 1072-2.0 of the Administrative Code embrace the emissions from their plants or are intended to do so or are of sufficient clarity and definiteness to give notice thereof. By the nature of the relief sought by the motion and cross motion such an issue is not to be determined upon the basis of this submission as a question of fact since only questions of law are tendered. It is not required, therefore, to determine whether the emissions from plaintiffs’ plants are dust or fumes or odor or vapor as defined. It is required only to determine whether the definitions are clear and definite and no valid argument is presented which could in the least tend to a conclusion that the definitions are not clear and definite or do not constitute adequate guide and standard. They are and they do all these things, stand as adequate guide and standard, give notice of the act to be controlled and supervised and they apply to paint spray as an industrial process.
To the plaintiffs the issue is of utmost importance. It is indicated that there is to be expansion in the installation and use of *37 the licensed equipment as used by the plaintiffs. To them, also, the problem whether the statutory situation applies to them is not complex. To the administrators of the legislative policy the problem is most complex and it is broad as industry and the entire operation of a complex economy of a metropolitan area.
In connection with the earlier Smoke Control Law the court, in Consolidated Edison Co. v. Murtagh (280 App. Div. 221, 222) stated: “ Certainly the contemplation of the law is continuing regulatory and corrective treatment by persons professionally and technically qualified to design and execute a corrective program.” Equally certainly, the contemplation of existing law is continuing regulation and correction and corrective treatment by persons qualified to design and to execute a corrective program, and this is so because of the fact that by reason of the passage of time and of increasing intensity and complexity of the problem necessitating expanded control, the coverage of the law is therefore broader and deeper. It is a fact that the statutes and rules make no reference in words to the paint-spraying operation, but it is a myopic view that does not find such operation necessarily and inherently expressed therein as a proper subject for continuing supervision and control. A view so myopic was directly and forthrightly rejected in Matter of City of Utica v. Water Pollution Control Bd. (5 N Y 2d 164,168-169) where the court stated: “ The Legislature may constitutionally confer discretion upon an administrative agency only if it limits the field in which that discretion is to operate and provides standards to govern its exercise. * * * That does not, however, mean that a precise or specific formula must be furnished in a field ‘ where flexibility and the adaptation of the [legislative] policy to infinitely variable conditions constitute the essence of the program. ’ (Lichter v. United States, 334 U. S. 742, 785.) * * * Obviously, the Legislature cannot ‘ constitutionally [be] required to appraise beforehand the myriad situations to which it wishes a particular policy to be applied and to formulate specific rules for each situation. Necessity therefore fixes a point beyond which it is unreasonable and impracticable to compel [the Legislature] to prescribe detailed rules ’. (American Power Co. v. S. E. C., supra, 329 U. S. 90, 105).”
In dealing with water pollution under a Louisiana Statute the court, in Texas Co. v. Montgomery (73 F. Supp. 527, 533-534, affd. 332 U. S. 827) stated: “it would have been impossible for the Legislature to prescribe a formula for the Commission’s guidance or to lay down rules with reference to harmful pollution, applicable to all waters': What might be harmful *38 pollution in one body of water might not be harmful pollution in another. Of necessity, a determination of the facts of what might constitute harmful pollution was left to a fact-finding group. The Legislature was compelled to create an agency to administer the act.”
We have seen, therefore, that the statute lays down the policy and objective, the power to regulate and implement and to impose punishment for violation, and that there exists historically and in the present physical aspect of the economic and industrial establishment the necessary factual support for the legislation and its justification. Better understanding will emerge of what plaintiffs regard as defects upon acceptance of the fact that emissions from fuel-burning equipment, the first subject of control in this category, have been for long under continuing supervision and experiment, resulting in a subtantial fund of acquired knowledge and corrective equipment and procedures, of the fact that many old and new varieties of emissions from old and new sources have increased and have not yet received the attention given to smoke control, that the increasing intensity and variety of emissions from an increasing number and variety of sources add to the pollution of the air by smoke even in its controlled state, that the protection of the public health need not await the point at which equipments and procedures are evolved to afford that protection and reduction in other areas that has been accomplished in the area of smoke control. Therefore, the suggestion that the guides and standards supplied generally are not equivalent to those supplied for smoke control is disingenuous. (Williamson v. Lee Optical Co., 348 U. S. 483; Matter of Engelsher v. Jacobs, 5 N Y 2d 370, cert, denied 360 U. S. 902.)
Plaintiffs raise a number of subsidiary points. Several attempts to suggest, but unsuccessfully, that the rules and regulations conflict with those of other agencies. No such conflict or overlapping is shown. Moreover, the Commissioner and the board are concerned not primarily with industrial processes, equipments and businesses and their locations and constructions and installations in accordance with requirements of other agencies, but rather with resultant and impermissible emissions. Question is raised whether suEcient opportunity for review has been afforded. No review by proceeding under article 78 of the Civil Practice Act need be provided in order to enable an aggrieved party to take advantage thereof. No such proceeding may be maintained in the absence of exhaustion of administrative remedy. No review by way of administrative remedy need be supplied. Indeed, prosecutions for violation may be undertaken *39 even before administrative review where it is provided has been taken. The failure to provide any administrative review does not render the legislative scheme and its implementation unconstitutional. (Consolidated Edison Co. v. Murtagh, 280 App. Div. 221.)
All of plaintiffs’ objections and contentions have been examined and carefully considered and found to be without merit, with the result that upon the basis of this submission defendants are entitled to prevail and to declaratory judgment in their favor, in accordance with this disposition. The motions are disposed of accordingly.