Milton Shalleck, J.
Among the many angry voices heard these days', the cry against air pollution seems to be stentorian and rampant. And not without reason. For the impurity of the New York 'City air has become a combative scourge.
Only the other morning on my motor way to court I was halted by an impenetrable wall of vehicular traffic before me on Second Avenue. Stopped alongside my left was a high Diesel engined tractor trailer; on my right was a New York City omnibus (I should imagine similarly powered); in front of me was a large multi-wheeled truck. All were emitting noxious fumes. Since no vehicle could move for about 6 or 7 minutes, the exhaust odors were so overwhelming, I felt that I would succumb. I therefore shut the narrow slit of open window of my car and turned on the air conditioning in order to breathe; yet the outside temperature dictated heat rather than cold.
Ecology has understandably become the ‘ ‘ in ” word of the hour. But it was hardly noticed during the times when this country was becoming economically great. Emphasis for years had been on escalating business and enhancing the national wealth and the physical comfort standards of our inhabitants. Little thought was given to the effects of production efforts of automobile factories, electricity generating plants, heating systems, chemical manufacturers, and the like. Only recently, when the imaginary ills of a proposed 'Columbia University gymnasium and then the likelihood of greater involvement in a useless-far-away-war had diminished was there a change of attack to achieve the proper basic living standards. Questions like what kind of water do we drink and swim in; what kind of air do we breathe; are the bananas or oranges we eat contaminated with D. D. T., or do the broiled trout or scrod served us contain dangerous amount of mercury? were justifiably raised.[1]
All these comparatively new attention-getters are being given heed in ways which we hope will eventually return to us fresh air, fresh water and fresh food. But the upheaval of our ways of life, both personal and commercial, cannot be accomplished with the speed of an atomic bomb. Because of the regularity and stability of the “ usual way of doing business ” for so long a time, the change must necessarily be a gradual one. We would, of course, prefer the immediacy of change; but factories and cars which we need for our present standards are *125 already here. Refinements of operation at substantial costs will be made; but they must be effective and therefore must take time. Haphazard emergency handling in an effort to overcome a most deteriorating situation can only result in haphazard results. Such an end is hardly to be sought.
New York City took a long anticipatory step in the proper direction 18 years ago by the enactment of laws establishing the Department of Air Pollution Control (Local Laws, 1952, Nos. 114, 115 of City of New York) and delegating to it the constitutional right to make rules and regulations. (See West Bronx Auto Paint Shop v. City of New York, 33 Misc 2d 29, affd. 17 A D 2d 772, mod. 13 N Y 2d 730.) A. revised air pollution control code, transcending mere smoke control, was promulgated by that department, and became effective on October 14,1964. We are concerned here only with section 9.03 (subd. [a], par. [1]) thereof. It reads:
“ Sec. 9.03. Emission of air contaminant; Standard Smoke Chart:
“ (a) No person shall cause or permit the emission of an air contaminant of:
“ (1) A density which appears as dark or darker than No. 3 on the Standard Smoke Chart, or of an opacity which obscures vision to a degree equal or greater than smoke of No. 3 density on the Standard Smoke Chart ”. The definitions proclaim that “ Emission ” means “ dispersion into the open air of New York City” (§ 1.03, subd. [o]); “air contaminant” means “any particulate matter or any gas or any combination thereof, other than water vapor or natural air ” (§ 1.03, subd. [b]); “ Standard Smoke Chart ’ ’ means ‘ ‘ The Ringelmann Chart, as published by the H. S. Bureau of Mines, photographically reduced to l/18th inch size for use in the field ” (§ 1.03, subd. [z]).
The particular case involved here is an old one.[2] It arose almost two years ago; but, as is a not unusual situation in any case, this matter had already gone before 10 Judges.[3] I hope it will find its final resting place with me.
It started with what has become to be known as a “ universal ’ ’ summons, this one No. X065376, being served upon “Rodman Robert”. It is marked “ complaint * * * offense * * * *126 non-traffic * * # description * * * dense smoke from incinerator stack * * * in violation of section 9.03 subd. A(l) of title of law if not shown above Air Pollution Control Code ” and it is sworn to by one Patrick Downes, Insp. Man. So. APC ” who “ deposes * * # that the defendant identified above committed the acts set forth and thereby violated the law as charged.” No other facts are alleged; the outside cover showing only that defendant is ‘ ‘ charged with violation of Dense Smoke ’ ’, a description probably placed thereon by a Clerk of the court. One may be astounded by the paucity of words used throughout.
From this bland statement of the “ facts ” several questions come immediately to mind: (1) Is the accusation a misdemeanor or a violation?; (2) Is it properly sworn to?; (3) Is the complaint sufficient as a matter of law? Defendant moves to dismiss the complaint claiming that the charge (if it may be characterized as such), being a misdemeanor, the second and third questions must be answered in the negative.
As to the character of the charge: defendant argues that the offense is a misdemeanor since it imposes, as a penalty, more than 15 days’ imprisonment (Penal Law, § 10.00, subd. 4)[4] (It is not designated as a misdemeanor in the Penal Law itself.) Defendant is at least correct to the extent that section 894^3.0 of the Administrative Code of the City of New York provides for penalties for a first offense to be no less than $25 nor more than $100 and/or imprisonment up to 3 months; for a second such offense a fine of $75 to $500 and/or imprisonment up to 6 months; and for a subsequent offense a fine of $200 to $1,000 and/or imprisonment for not more than 6 months. Therefore it would seem at least partially evident that the violation should be denominated a misdemeanor.
Subdivision 2 of section 55.10 of the revised Penal Law enacted in 1965 (eff. Sept. 1, 1967) tends to support this view. Paragraph (c) of that section states: “ Except as provided in paragraph (b) of subdivision three, where an offense is defined outside this chapter and a sentence to a term of imprisonment in excess of fifteen days but not in excess of one year is provided in the law or ordinance defining it, such offense shall be deemed an unclassified misdemeanor.” Yet reference to the exception noted raises an additional problem; for subdivision 3, entitled ‘ ‘ Violations ’ ’ states that:
*127 “ Every violation defined in this chapter is expressly designated as such. Any offense defined outside this chapter which is not expressly designated a violation shall be deemed a violation if: * * *
“(b) A sentence to a term of imprisonment in excess of fifteen days is provided for such offense in a law or ordinance enacted prior to the effective date of this chapter but the offense was not a crime prior to that date. ’ ’
— a rather ambiguous interlocking of present and past provisions. Especially is this here perplexing, since the revised Penal Law prohibits the strict construction of penal statutes (§ 5) which was the overriding consideration theretofor.[5] Now the law requires a construction ‘1 according to the fair import of their terms [of the penal statute] to promote justice and effect the objects of the law.” So that when formerly the defendant would be favored by the doubt and have the charge considered the lower of the two,[6]1 am now bound by subdivision 2 of section 5.05 of the revised Penal Law which directs that ‘ ‘ Unless otherwise expressly provided, or unless the context otherwise requires, the provisions of this chapter shall govern the construction of and punishment for any offense defined outside of this chapter and committed after the effective date thereof, as well as the construction and application of any defense to a prosecution for such an offense.”
Undoubtedly the statute is penal, although not so designated. And despite its being termed (either actually or by intendment only) a violation, the punishment provided for the infraction of its terms goes far in impelling the conclusion that it is more than a mere violation.[7] Since the punishment is not in excess of a year (a felony by definition in subdivision 5 of section 10.00 of the revised Penal Law) it must necessarily be a misdemeanor. Fortified in this conclusion is the constraint of section 5.00 for the fair import of the statute and the section of the control code here considered is to protect the inhabitants of this city from the harmful effects of air pollution which may be due to the *128 cumulative effect of emissions from many sources — including incinerator stacks. Apropos is the statement by Justice Robert Jackson in United States ex rel. Marcus v. Hess (317 U. S. 537, 557): “ If ever we are justified in reading a statute, not narrowly as through a keyhole, but in the broad light of the evils it aims at and the good it hoped for, it is here.”
Having decided that an offense under section 9.03 (subd. [a], par. [1]) is a misdemeanor, is the “ complaint ” here properly sworn to ? (Cf. People v. Scott, 3 N Y 2d 148.) The short answer is “ Yes.” (N. Y. City Crim. Ct. Act, § 58, subd. [10].) I doubt whether in this regard there is any distinction between an accused being charged with a violation or a misdemeanor. The court had jurisdiction of the subject matter when the summons with the “ complaint ” was issued. When defendant, with his consent, appeared by counsel, the court had jurisdiction of the person (People v. Rockwell, 38 Misc 2d 645, 649-650, esp. ns. 7 to 10). And so long as this section has not been held by a higher court to be unconstitutional, I shall consider its provisions to be binding on all concerned: the People, the defendant and the court.
The third question, is the complaint sufficient as a matter of law? is ever so much more complicated and provoking. For it is fundamental — too well established to require case citations for support — that an accused must be told the facts of the charge against him so as to be able sufficiently to prepare his defense. WTiile a minor infraction may not require the solemnity and particularity of an indictment (People v. Hipple, 263 N. Y. 242, 244; People v. Love, 306 N. Y. 18) a jail sentence and fine of the possible severity of the charge here will compel a more enlightening complaint. The Court of Appeals has stated it precisely in People v. McGuire (5 N Y 2d 523, 526): “ The particular acts constituting a crime are more than a technicality. It is fundamental that a person accused of crime is not required to speculate as to what crime, if any, the information charges, for he is entitled to know in advance of trial what crime he is called upon to defend.” See, also, People v. Zambounis (251 N. Y. 94, 96) where the court said: “ The defendant should be informed of the nature of the charge against him and of the act constituting it, not only to enable him to prepare for trial, but also to prevent him from again being tried for the same offense.” To the same effect: People ex rel. Hotaling v. Dale (47 N. Y. S. 2d 702); People v. Patrick (175 Misc. 997); People v. Grogan (260 N. Y. 138).
Omitting the few extraneous references, the paper summons served upon defendant merely states that he is “to answer a *129 charge made against him * * * as follows: dense smoke from incinerator stack.” Even if this were a simplified indictment (Code Grim. Pro., ch. Ill-A) it would not come within the requirements of section 295-c of the code. That section orders the statement of crime to contain, “ if it be a misdemeanor, having no general name, such as libel, assault, or the like, a brief description of it, as is given by statute. The statement of crime may also contain a reference to the statute defining the crime.”
No doubt the simplified form of summons permitted by Part 2950.10 (rule 10) of the New York City Criminal Court Rules was brought about by the plethora of crimes which are so rapidly increasing and the dearth of law enforcement personnel. It is necessary, under the ever-mounting numbers of matters which have to be handled by the police and peace officers of all sorts, to place in their hands a simplified method by which defendants may be brought into court. One must bear in mind, too, the political pressure brought upon all such people to give summonses rather than to make arrests.[8] And so this simplified, 1 ‘ universal ’ ’ summons was devised. In the main it is quite . sufficient; but its application and content become less ‘ ‘ universal ’ ’ when a defendant may end up with a sentence of six months in jail.[9] As is the case here, if defendant, on sentence after conviction, were found to be a multiple offender. Hence the necessity for care in making the accusation against him. And in the instant matter that necessary standard of care in accusing him is not met.[10]
A criminal case is not a game of advantage. Fairness to the People, on the one hand, must be equated with fairness to the defendant, the other party to the case. So if defendant is improperly charged with crime, he must prevail — without the necessity of trial; for the accusation cannot then be countenanced with respect. And here the defendant — who might go to jail for six months — is called upon “ to answer a charge made against him [for] dense smoke from incinerator stack ”, What degree of respectability can such an accusation evoke? Is this defendant apprised of what was forbidden and the severity of *130 his culpability merely by the addition of the words ‘ ‘ in violation of section 903, subd. A(l) of * * # Air Pollution Control Code ’ ’ ? Criminal liability must stand on no such infirm accusatory words. (Cf. People v. Autorino, 61 Misc 2d 217.) The statue of the figure of justice would crumble on so mercurial a dado. In the complicated life of our city, one must be pragmatic in his approach to its ever-present problems. This does not exclude the Judges who are the guardians of justice for all — the People and defendants alike.
Incinerator smoke may arise from divers causes, not necessarily engendered by the act of the person in charge. Some of the incinerators operate automatically, or by a touch of an off-on button, thus unaccountably may run wrong; some superintendents of buildings are without much schooling and know only by practical demonstration what they are to do concerning incinerators; residents may throw smoke-producing trash into the incinerator without knowledge or intention. None of this in any way may be attributed to a defendant such as this one; yet the People wish to hold him here criminally responsible without sufficient accusation of what he personally did to cause the condition. There are less than adequate words to connect defendant at all with the alleged penal act. There are not even the words required by the fundamental requirements of our penal procedure statutes, since that act has ‘ ‘ no general name ’ ’ and is not otherwise described than ‘ ‘ Dense smoke from incinerator stack.” It is insufficient as a matter of law.
I am therefore constrained to grant the motion to dismiss.[11]

. See National Geographic Magazine, December, 1970 issue, pp. 737-780: “ Our Ecological Crisis.”

. Even at this late date no final briefs have been submitted to me (although requests for extensions therefor had been regularly granted) and at long last I have decided to proceed to decision without them.

. Rohan, Archibald, Goldberg, Stone, Yeargin, Weisberg, Levy, Ribando, Strong and Scott. I make no reference to cause for this delay. I feel quite convinced that the reasons may well be found in the system rather than be attributed to the unwillingness of the Judges to take the matter on.

. “ ‘ Misdemeanor ’ means an offense * * * for which a sentence to a term of imprisonment in excess of fifteen days may be imposed ” but less than one year.

. “ Statutes creating crimes are to be strictly construed in favor of the accused; they may not be held to extend to cases not covered by the words used.” (United States v. Resnick, 299 U. S. 207, 209; People ex rel. Cosgriff v. Craig, 195 N. Y. 190,197.)

. See Shientag, J.’s holding in People ex rel. Garofola v. Warden of Rikers Island (186 Misc. 992) to the effect that only where the Administrative Code specifically calls the offense a misdemeanor is it such; otherwise it is to be considered a violation only.

. See discussion in People v. Gatti, Bronx County, Crim. Ct., Part 7, decided Nov. 13, 1962; People v. Moses, 57 Misc 2d 960; Duncan v. Louisiana, 391 U. S. 145, 159-160.

. It is the same kind of theoretical ■ — ■ not practical —• thought used in an unsupported effort to have courts put accused back on the streets on parole rather than on bail, despite the belief of the court that the defendant would not return and make an appearance in court when required.

. If the punishment were one more day, defendant would be entitled to a trial by a jury of his peers (Baldwin v. New York, 399 U. S. 66).

. A defendant should not be called upon to move for a bill of particulars (§§ 295-g, 295-h) if this procedure is to be a simplified one.

. When I acknowledge such constraint, I do so almost apologetically, for my personal inclination and desire are to uphold the acts of the law enforcement officers in respect of engulfing ecological problems, especially of air pollution in our city. But my functions as a Judge preclude subjective desires. I must decide on the law as it is and I cannot stultify myself in that capacity simply because I should prefer a different result.